UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TENNESSEE VALLEY AUTHORITY, ) | |
| ) | Case No. 1:14-cv-356 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Christopher H. Steger |
| W. ALLAN JONES, JR., and BATES ) | |
| BEND FARM LLC, ) | |
| ) | |
| *Defendants*. ) | |

**TRIAL OPINION**

In 1933, Congress created the Tennessee Valley Authority ("TVA") and entrusted it with broad discretion over matters "relating to 'navigability, flood control, reforestation, marginal lands, and agricultural and industrial development of the whole Tennessee Valley.'" *Gold Point Marina, Inc. v. Tenn. Valley Auth.*, 635 F. Supp. 39, 42 (E.D. Tenn. 1986) (quoting *United States, ex rel. TVA v. Welch,* 327 U.S. 546, 553 (1946)). Persons who wish to build along the Tennessee River or its tributaries must first receive permission from TVA. 16 U.S.C. § 831y-1. Failure to do so allows TVA to seek an injunction ordering the removal of structures built without its approval. *Id.*; *Gast v. Tenn. Valley Auth.*, No. 4:10-CV-45, 2011 WL 864390, at *9 (E.D. Tenn. Mar. 10, 2011).

The latest challenge to TVA's longstanding authority comes in the form of Defendants W. Allan Jones, Jr.—a sophisticated businessman and large landowner—and his Bates Bend Farm LLC. Contrary to Congress's clear statutory directive, Defendants constructed a wall, a dock, and a boathouse on the south bank of the Hiwassee River—on property owned by TVA.

Defendants also constructed a concrete boat ramp immediately upstream from the retaining wall and dock. Defendants' claim to the riverfront property where they built the structures is based entirely on an access easement reserved in a deed from 1877 that Defendants acquired by quitclaim deed over a century later.

On TVA's motion for judgment on the pleadings, the Court found that the 1877 Deed reserved only an access easement, rather than fee ownership as Defendants had argued. (Doc. 56.) The Court later granted summary judgment on a series of counterclaims asserted by Defendants. (Doc. 68.) Shortly before trial, TVA withdrew its claims for damages and proceeded solely on the issue of injunctive relief. (Doc. 64.)

The Court held a bench trial on May 23 and 24, 2016, on whether TVA should be granted a permanent injunction ordering removal of Defendants' structures from TVA's property. TVA asserted two bases for the requested injunction: (1) that Defendants did not secure a permit for the structures pursuant to Section 26a of the TVA Act, and (2) that Defendants' structures are not within the scope of their access easement and, therefore, the structures are trespasses to TVA's property. Defendants argued that they should not be required to apply for a permit because TVA told them that no permit would be approved and that the structures were are authorized by their easement rights.

At trial, it became clear that Defendants had no viable defense to TVA's Section 26a enforcement action. Nonetheless, the Court heard evidence on the trespass claim because it informed the Court's judgment on appropriate injunctive relief. The following opinion sets forth the Court's findings of fact and conclusions of law.

## I. FINDINGS OF FACT

In the late 19th century, the Saulpaw family owned land on both sides of the Hiwassee River near Bates Bend. On the north bank, the family owned and operated Saulpaw Mill. Saulpaw Mill patrons who lived on the south bank would travel to the property the Saulpaws owned on the south bank of the river and float their grain across to be milled. In 1877, the Saulpaws sold their property on the south bank to W.F. Bates in fee simple but reserved an interest in a road leading "down to the landing at the river." (Def. Ex. 1.) The 1877 Deed describes the transferred land as follows:

> Lot No. 3, beginning on a stake on the river bank corner to lot No. 2, thence running with line thereof South 18 degrees West to a stake corner to Lot No. 4. Thence with a line thereof North 13 degrees East to a stake on the bank of the river corner to Lot No. 4, thence down the river to the beginning including thirty seven acres and one half acres except a Road fourteen wide which runs down to the landing at the river just below Saulpaw's Mill, which Road as it is now laid out and used by the patrons of Saulpaw's Mill is hereby expressly reserved and is not conveyed but said W.F. Bates has permission to put up a gate at the upper end of said Road. To have and to hold to him the said W.F. Bates in fee simple forever.

(Def. Ex. 1.) This land is included in what TVA now calls Tract CR-1187. TVA acquired the land making up this tract by warranty deed in 1939 (Def. Ex. 2) and a warranty correction deed in 1940 (Def. Ex. 3).[1] In 1990, Defendant Jones obtained quitclaim deeds conveying the interest reserved to the Saulpaws in the 1877 Deed. (Def. Ex. 15.) Once Defendant Jones acquired these quitclaim deeds, he began to claim that these deeds granted him fee ownership of several acres of land that was also claimed by TVA, including the portion of the riverbank on which the concrete

---

[1] Both of these deeds note that the transferred land was "subject to such rights as may be outstanding in third parties to a 14 foot right of way, extending across the described land to the landing immediately below the former site of Saulpaw Mill." (*See* Def. Exs. 2, 3.)

3

ramp, retaining wall, dock, and boathouse now stand.[2] (Def. Exs. 10, 11, 21.). TVA objected to Defendants' erection of these structures and disputed Defendants' claim to ownership of the property. (Def. Exs. 10, 11.) Defendants invited TVA to file "a friendly lawsuit" to resolve their dispute. (Tr. at 213.) During these negotiations, TVA also informed Defendants that any Section 26a permit application would be rejected as Defendants did not have sufficient property rights for TVA to grant them a 26a permit. (Def. Exs. 10, 11; Tr. at 37–43, 184–85.)

Nevertheless, Defendants built a concrete ramp, a 117-foot-long retaining wall, a 23-by-32-foot dock, and a boathouse on the waterfront. (Tr. at 16; Def. Ex. 19.) Defendant Jones had previously applied for and received 26a permits for structures on other property he owned, but he never applied for a permit for the structures built on Tract CR-1187. (Tr. at 16–18.) At trial, Defendants attempted to minimize their knowledge of the 26a permitting requirements, but the testimony was inconsistent, contradicting itself at times within the same sentence. For example, when asked by his attorney whether TVA had made a demand that he apply for a 26a permit, Jones responded, "No. No. They've never mentioned-- This is the first I've heard of 26a, applying at -- I mean, I had been trying to apply, and they kept saying I didn't qualify to apply." (Tr. at 37.) Minutes later, on redirect, TVA's counsel engaged in the following colloquy with Jones:

> Q  Now, I believe I heard you say on -- as Mr. Horton was examining you, that TVA never said anything about a 26a permit for these facilities. Did I hear that correctly?
> A  Yes.
> Q  So in the letters that you got from TVA as early as 1990 there was no mention of a 26a requirement?
> A  They said I don't qualify to get a -- to apply for a 26a.

---

[2] The Court resolved this dispute in TVA's favor on their motion for judgment on the pleadings. (Doc. 56.)

4

(Tr. at 43.) The Court finds Defendant Jones knew the 26a requirements were applicable to the property and disregarded those requirements in constructing the structures.[3]

Defendants' primary arguments at trial focused on the historical use of the disputed property and essentially consisted of two prongs: (1) the Saulpaws had made use of a dock such that the easement reserved would have been understood to include the right to construct a similar dock; and (2) the retaining wall was necessary to protect Defendants' easement from erosion. Neither argument is supported by the record.

Evidence presented at trial demonstrated that no antecedent to Defendants' structures existed at the site. Neither side presented direct historical evidence regarding usage on this site in 1877. However, TVA did present several pieces of indirect evidence that, collectively, persuade the Court. First, TVA presented an Army Corps of Engineers report from 1901 that catalogued the major features along this stretch of the Hiwassee River, but that contained no reference to a landing across from Saulpaw Mill. (Tr. at 68–70, Pl. Ex. 20.) The report catalogued other landings nearby and even catalogued Saulpaw Mill, but made no reference to any structure, landing, or feature at the site in question. (Tr. at 68–70, 106.) Second, TVA presented a 1940 land acquisition map and records concerning TVA's creation of the nearby reservoir. These records indicated that no historical structures were present when TVA purchased the property. (Tr. at 60–65; Pl. Exs. 22, 22A.) Finally, Barry Savage, TVA's expert, testified persuasively that the Saulpaw Mill patrons would not likely have used a dock at the landing; rather, they would have accessed the mill by flatboat, which would not have required a

---

[3] While there is no mens rea finding required to enforce TVA's 26a authority, the Court finds Defendant's knowledge of the requirements relevant to the equitable determination of whether to award injunctive relief.

5

Case 1:14-cv-00356-TRM-CHS   Document 89   Filed 08/04/16   Page 5 of 13   PageID #: 2529

dock.[4] (Tr. at 106–07.) Based on this evidence, the Court finds that Defendants' structures are not similar to what was present at the site in 1877.

Defendants presented several witnesses who testified that they remember rotting posts in the water and asked the Court to infer that these rotting posts were the remnant of an old dock. However, these witnesses were born well after 1877.[5] And when Boyce Varnell, Defendant's oldest witness, was asked whether "when you were a kid, in the '30s, '40s, when you were younger, did you see any structures comparable to those structures, the dock and the boathouse, way back then?", he answered, "No." (Tr. at 169.) Testimony recalling rotting posts in the water in the 1960s, 1970s, and 1980s (Tr. at 32, 153, 173, 179) does not nearly measure up to the evidence submitted by TVA originating much closer to the relevant time period.

Defendants also argued that large steamboats had accessed the mill by river and would have needed a wider berth than the 14-foot easement delineated in the 1877 Deed. To support this argument, Defendants attempted to enter into evidence a photograph of a steamboat they claimed must have been pulled up alongside the landing (Tr. at 75–76); however, TVA objected, and Defendants never produced a witness who could properly authenticate the photograph as depicting the disputed location. (Tr. at 207–08.) Defendants attempted to support this and other assertions about the history of the property through Defendant Jones's testimony regarding his historical research at the public library, but that testimony was not admissible. (Tr. at 198–208.)

---

[4] TVA also presented pictures from similar locations at similar time periods depicting the boats that would have likely been used. (Pl. Exs. 1, 7, 8, 9, 10.)

[5] Michael Brown was born in 1958 (Tr. at 149), and Boyce "Bud" Varnell was born in 1928 (Tr. at 161).

Defendant Jones was not qualified as an expert,[6] he had no personal knowledge of the facts about which he attempted to testify, and no hearsay exception applied to his testimony regarding what he found at the public library. (Tr. at 205.) And even if such testimony were admissible, it would not have been sufficient to rebut TVA's expert testimony and its properly authenticated historical documents.

Finally, the Court finds Defendants were not forced to erect the retaining wall to protect their access easement against erosion. Erosion has no effect on Defendants' ability to access the water; it merely shortens the distance Defendants must travel to access the water. Defendants' evidence at trial focused primarily[7] on the need for the retaining wall to protect "the landing," from erosion. (*See* Tr. at 32–34 (testimony of Jones), Tr. at 154–55 (Testimony of Brown), Tr. at 250–51 (Testimony of Price).) But, as the Court has already ruled, TVA—not Defendants—has fee simple ownership in the property Defendants call "the landing." (Doc. 56.) And the retaining wall is not necessary to protect Defendants' access easement; in fact, as Defendants' engineering expert testified, the retaining wall could *accelerate* erosion at the end of the wall—where the access easement lies. (Tr. at 251.)

---

[6] Though Defendant Jones stated that he considered himself a historian (Tr. at 199), Defendants never sought to tender Defendant Jones as an expert. Therefore, the Court need not decide whether publishing a book on family history and owning a collection of old high school annuals and other local historical artifacts qualified Jones to testify as to what types of boats might have been used in connection with the Saulpaw Mill landing. (*See* Tr. at 207–08.)

[7] Defendant Jones also claimed that erosion was endangering the road, but that is not equivalent to endangering the easement. (Tr. at 32–34.) All evidence presented at trial indicated that the easement road ran in a fairly straight line from the county road to the Hiwassee River. (Def. Ex. 30.) Evidence that erosion was claiming the end of the road does not necessarily endanger Defendants' access easement.

## II. CONCLUSIONS OF LAW

### A. Section 26a

Section 26a requires a permit before anyone may construct any "obstruction . . . affecting navigation." 16 U.S.C. § 831-y. Implementing regulations specifically provide that "boat docks, piers, boathouses . . . and boat launching ramps"[8] are obstructions that require a permit. 18 C.F.R. § 1304.1. "[TVA's] approval of plans is a condition precedent to the construction of any structures, that construction without approval is prohibited, and [TVA] has the power to enforce this provision." *Gast*, 2011 WL 864390, at *9. District courts are specifically empowered to issue injunctive relief ordering the removal of unpermitted structures. 16 U.S.C. § 831-y.

The Section 26a permitting requirement applies to the property in question, and it is undisputed that no permit was issued. That Defendants possess an easement right does not excuse their failure to comply with this requirement; indeed, Rule 26a injunctions have ordered fee owners to remove docks constructed without a 26a permit. *See, e.g.*, *Gast*, No. 2011 WL 864390, at *9.

At trial, Defendants essentially argued for an exemption. Because TVA purchased the property subject to Defendants' easement rights and because, in Defendants' view, denial of a 26a permit would destroy their easement rights, Defendants argued the Court should relieve them from the permit process. Put another way, Defendants argued that to allow the government to clear a cloud on its title by regulating that cloud out of existence—rather than paying for it— would unfairly incentivize TVA to negotiate in bad faith for less than full ownership of the

---

[8] To the extent Defendants attempted to argue that the ramp at issue was not a boat ramp (Tr. at 211), whether it was or was not a boat ramp is not dispositive. The cited list is non-exhaustive, and a concrete ramp extending below the water is functionally equivalent to a boat ramp for purposes of determining obstruction to navigation.

8

property knowing that it could always obtain clear title later through regulation. But two truths dispatch this argument. First, the law already provides the solution to this problem—an inverse condemnation action—and Defendants have not availed themselves of that remedy. Second, there is no permit application solely because Defendants chose not to submit one. That Defendants believed any application would be denied is irrelevant.

Throughout the proceedings, Defendants presented the false narrative of an impossible catch-22: "Since TVA previously erroneously and consistently indicated that Jones had no property interest which would allow him to even apply for a permit under § 26a, TVA cannot now contend that the absence of such a permit mandates removal." (Doc. 87, at 1; *see also* Tr. at 7–10.) This position is, at best, sophistic. Congress has entrusted TVA—not Defendants, or even this Court—with the decision of whether to permit construction under 26a. *See Brown v. Tenn. Valley Auth.*, 514 F. App'x 865, 869 (11th Cir. 2013) (holding that TVA permitting decisions are not subject to judicial review). Accepting Defendants' argument would place them in a better position (having a court decide whether to allow the structures) as a result of their decision to flout TVA's statutory authority than they would have otherwise occupied had they followed generally applicable rules for 26a permit applications. The Court declines Defendants' invitation to ignore Congress's plain intent as expressed in the TVA Act.

The Court holds that Defendants' structures were erected in violation of Section 26a permitting requirements.

9

Case 1:14-cv-00356-TRM-CHS   Document 89   Filed 08/04/16   Page 9 of 13   PageID #: 2533

### B. Trespass

Under Tennessee law,[9] "the easement holder's use of the easement must be confined to the purpose stated in the grant of the easement." *Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n*, No. M200501193COAR3CV, 2006 WL 2449909, at *3 (Tenn. Ct. App. Aug. 21, 2006). An easement owner may make improvements "reasonably necessary" to serve the easement's purpose but he "cannot materially increase the burden of [the easement] upon the servient estate or impose thereon a new additional burden." *Adams v. Winnett*, 156 S.W.2d 353, 357–58 (1941)).

Here, the parties do not dispute the purpose for which the easement was created—to allow Saulpaw Mill patrons access by river to Saulpaw Mill. Unless Defendant's structures are reasonably necessary to accomplish that purpose and do not materially increase the burden on the servient estate, they constitute continuing trespasses.

As the Court has already determined on the motion for judgment on the pleadings, the boathouse is outside the scope of Defendants' easement. The record before the Court bears no indication that such a boat storage structure was contemplated by the 1877 Deed or was necessary for the use of the easement. The Court needs only apply common sense to determine that such a structure is in no way necessary for Defendants to access the water. *Cf. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2317 (2016) ("Courts are free to base their findings on commonsense inferences drawn from the evidence.").

As to the dock and retaining wall, the facts point strongly towards a finding that such structures are outside the scope of the easement. First, the 1877 Deed restricts the easement to a

---

[9] As a matter of federal common law, federal courts apply state law to property disputes involving the United States. *Sherwood v. Tenn. Valley Auth.*, 590 F. App'x 451, 462 (6th Cir. 2014); *United States v. Little Lake Misere Land Co.*, 412 U.S. 580 (1973).

fourteen-foot-wide road running down to the landing at the river. (Def. Ex, 1). The 117-foot-long retaining wall and 23-by-32-foot dock appear to have been built entirely outside the delineated fourteen-foot easement road (Pl. Exs. 25, 26, 27; Def. Ex. 19),[10] and thus likely "materially increase the burden" on the servient estate. *Shew*, 227 S.W.3d at 577 (quoting *Adams*, 156 S.W.2d at 357). Second, the Court has found that no similar structures existed at the time of the 1877 Deed, further militating towards a finding that Defendant's structures constitute an impermissible additional burden. However, given that the Court's ruling on the 26a permit violation already provides a clear basis to award TVA all the relief it requested, the Court need not determine whether the structures are within the scope of Defendants' easement.

## III. INJUNCTIVE RELIEF

The Court considers four factors in determining whether to award permanent injunctive relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

As to the first factor, allowing parties like Defendants to disregard TVA's statutory authority under 26a would result in irreparable harm.

> TVA's undisputed authority to regulate obstructions on the Tennessee River and its tributaries depends on universal adherence to its promulgated regulations. If others who own private property adjacent to the river and its tributaries chose to

---

[10] From the record before the Court, it is not clear that the dock and retaining wall are built on the easement at all. The image submitted by Defendants appears to show the easement road terminating at the boat ramp, with the dock, retaining wall, and boathouse off to the side. (Def. Ex. 30.)

11
Case 1:14-cv-00356-TRM-CHS   Document 89   Filed 08/04/16   Page 11 of 13   PageID #: 2535

> mimic [Defendants'] disrespect . . ., then TVA's regulatory scheme would be thoroughly compromised. The resulting harm would be severe.

*Tenn. Valley Auth. v. Long*, No. 4:12-CV-704-VEH, 2013 WL 387933, at *3 (N.D. Ala. Jan. 18, 2013).

As to the second factor, remedies at law are not sufficient to compensate for this injury. Awarding legal damages instead of an injunction here would be tantamount to a forced sale of TVA's statutory permitting discretion.

As to the third factor, the balance of hardships favors awarding an injunction. Defendants propose that, instead of awarding the injunction, the Court should allow Defendants sixty days to file an application for a permit under 26a. Defendants assert that the issuance of an injunction would be inequitable because TVA had previously denied that Defendants had sufficient property rights to support a 26a permit. But, rather than applying for a permit and then appealing any denial, Defendants chose to build the structures anyway and invited TVA to file a "friendly lawsuit." (Tr. at 213.) Now that TVA has done just that, Defendants cannot complain it would be inequitable to enforce the injunction. While Defendants will suffer costs related to the removal of these structures, these costs are entirely the result of their "act now, ask for forgiveness later" approach. As a result, the potential hardship Defendants created for themselves does not weigh significantly against imposing the injunction.

As to TVA, Defendants suggest that requiring removal of the retaining wall would be inequitable because the construction of the wall actually conferred on TVA the benefit of controlling erosion. Setting aside the fact that Defendants' own expert testified that the retaining wall could actually increase erosion on the land adjacent to the wall (Tr. at 251), it is not for Defendants to decide whether the wall benefits TVA. As the Court has stated previously, TVA has the authority to decide the course of action that best serves its public purposes. (Doc. 68, at

14.) Evidence at trial established that TVA had evaluated the removal and planned to implement measures to control any erosion that resulted from the wall's removal while at the same time restoring the stream bank to its natural state. (Tr. at 114; Pl. Ex. 31.) There is no reason for the Court to take it upon itself to protect TVA from the very remedy it seeks.

As to the public interest, the Court finds this factor weighs in favor of awarding TVA the injunction. The public interest is served by demonstrating that flagrant disregard for TVA's regulatory authority will not be tolerated and by permitting TVA, a public agency tasked with protecting the public interest, to determine how best to use the land. As the Court has stated previously, "[i]t is up to TVA to decide whether the public interest is best served by pursuing TVA's erosion-control goal or its environmental-preservation goal with regard to a particular piece of property." (Doc. 68, at 14.)

### IV. CONCLUSION

Defendants have not complied with the obligation Congress imposes upon any person wishing to erect structures on the Hiwassee River: they made no application for a permit under Section 26a of the TVA Act, codified at 16 U.S.C. § 831y-1. This omission alone is sufficient to grant TVA the relief it seeks; there is no need for the Court to rule on Defendants' claim that their mere access easement granted them the right to build such structures on TVA's property. Based on the evidence presented to the Court, equitable considerations strongly favor the permanent injunction TVA seeks. Accordingly, for the reasons explained above, the Court will enter a permanent injunction requiring Defendants to remove the structures. The Court will issue an appropriate order awarding the requested relief.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**